[S. F. No. 5907. In Bank.—March 21, 1913.]

## LOUIS LEVIN, Respondent, v. PABST BREWING COMPANY (a Corporation), Appellant.

LANDLORD AND TENANT—LEASE OF BUILDING FORBIDDEN BY FIRE ORDI-
NANCE—TERMINATION OF LEASE—ORDER OF CITY AUTHORITIES TO
REMOVE BUILDING.—A lease, made shortly after the great fire of
1906, of a lot of land in the burnt district of San Francisco "to-
gether with a building to be erected" thereon by the lessor, con-
tained a condition that if the building to be erected "shall be or-
dered to be taken down or razed by the municipal authorities, . . .
then this lease shall thereupon terminate, and that neither party
thereto shall be liable or responsible to the other thereunder." The
building erected was of a character not permitted in the district
in which it was situated by the fire ordinance of the city then in
force, but its erection was made with the unofficial consent of the
city authorities to temporary buildings of that character, subject
to removal at any time if such authorities so directed. Subse-
quently, the board of supervisors of the city enacted an ordinance
declaring that all such buildings should be demolished or removed
on or before a specified future date. *Held*, that the lease termi-
nated at the date when the order for the removal of such buildings
was made, and did not continue to the expiration of the time allowed
in which to obey the order.

ID.—HOLDING OVER AFTER TERMINATION OF LEASE—TENANCY FROM
MONTH TO MONTH.—The continued occupation by the lessee of the
demised premises, after the lease had become so terminated, became
a tenancy from month to month, under a further clause of the lease
providing that such holding over should be a tenancy from month
to month only.

ID.—ACTION TO RECOVER RENT—LEASE DECLARED ON AS CONTINUING
OBLIGATION.—An action by the lessor to recover rent alleged to be
due by the terms of the lease, for a period subsequent to the date
when it became so terminated, which declares solely upon the ex-
press covenants of the lease, and bases the right of recovery entirely
upon the theory that the lease was still in force when the action
was begun, cannot be construed as an action to enforce the liability
for rent under such tenancy from month to month.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order refusing
a new trial. John J. Van Nostrand, Judge.

The facts are stated in the opinion of the court.

Heller, Powers & Ehrman, and Sydney Schlesinger, for Appellant.

A. A. Sanderson, and Harold L. Levin, for Respondent.

SHAW, J.—This is an appeal from a judgment against the defendant and from an order denying its motion for a new trial.

On August 9, 1906, the plaintiff, in writing, leased to the defendant a parcel of land in San Francisco, "together with a certain building or structure to be erected on said property" by the plaintiff, at the monthly rental of $325, for the term of five years from the date of the completion of the building. The contemplated building was completed on November 10, 1906, the defendant took and held possession thereof from that date until February 10, 1909, when it tendered possession of the premises to plaintiff, vacated the same, and refused to pay any rent therefor. The present action was begun on March 20, 1909, to recover the rent for the two months beginning February 10, and April 10, 1909.

The lease contained the following condition:

"It is further agreed that if said building to be erected on said premises by said first party shall be ordered to be taken down or razed by the municipal authorities of said city and county, then this lease shall thereupon terminate, and that neither party thereto shall be held liable or responsible to the other thereunder."

There was nothing in the lease particularly specified as to whether the building to be erected was to be of wood, stone, brick, or iron. It was admitted, however, that the building erected by Levin was of a character not permitted in the district in which it was situated by the fire ordinance of the city then in force. . In January, 1908, the board of supervisors of San Francisco enacted an ordinance declaring that all such buildings erected in the city after April, 1906, "are hereby ordered demolished or removed on or before May 1, 1910," and directing the board of public works forthwith to serve notice on all owners and lessees of property having such buildings thereon, and making it the duty of said board to remove or demolish such buildings if the owner failed to do so as pro-

vided in the ordinance. Prior to February 10, 1909, the board, pursuant to this ordinance, gave notice to Levin that he must comply therewith and requiring the removal of the building.

We are of the opinion that the above quoted clause of the lease, taken in connection with the facts we have stated, establishes a good defense to the action. It provided that if the building erected "shall be *ordered* to be taken down or razed" by the city authorities, "*then this lease shall thereupon terminate.*" The plaintiff contends that the true meaning of this language, as applied to the ordinance in question, is that the lease did not terminate until the last day of the period allowed the owner or lessee to remove or demolish the building. The argument is that an order made on January 9, 1908, to remove or demolish a building "on or before" May 1, 1910, does not become an effectual order until the latter date and, hence, that it is not until that date that the clause became operative to end the lease. The language, however, is clear that if the building is "ordered" to be taken down, "*then* this lease shall thereupon terminate." This literally means that it terminates when the order is made and necessarily implies that it does not continue to the expiration of the time allowed in which to obey the order.

Under the circumstances existing when the lease was made this is the most reasonable interpretation to be placed upon it. The great fire destroying all the buildings in the central part of San Francisco occurred in April, 1906. This lease was made in August, 1906. At that time, it had been unofficially given out by the city authorities, and it was generally understood by the people, that the erection of temporary wooden buildings in the burned district, but within the prohibited limits, would be allowed for the immediate necessities of the inhabitants, but that they would be subject to removal at any time if the board of supervisors so directed. The period of this indulgence was undetermined and it was obvious that it would be uncertain. It was not to be expected that when such direction was given it would be for the immediate removal of such buildings. Good policy would dictate that a reasonable time would be allowed for such removal after the order therefor was made. It would not be fair to bind the tenant to pay rent up to the last day for the re-

moval of the building where such removal was to be made by
the lessor, as would be the case here. The tenant could not
know when his landlord would decide to remove the build-
ing and he might be put to great harm and loss by a sudden
notice to that effect by the lessor. To avoid these contin-
gencies the clause was advisedly so drawn as to end the lease
with the making of a municipal order directing the removal
of the buildings. If the tenant should then hold over, an-
other clause of the lease provided that such holding should
be a tenancy from month to month only. If he vacated the
premises, the owner could thereupon remove the buildings,
occupy them himself, or lease them temporarily until it was
convenient for him to remove them, and thus no injustice
would be done to him. The defendant did not vacate the
premises, but continued to occupy them for thirteen months
after the termination of the lease and paid the rent monthly.
This was a holding over after the termination of the lease
and under the clause referred to it became a tenancy from
month to month.

There might be some doubt whether the defendant had the
right to terminate this tenancy from month to month on Feb-
ruary 10, 1909, except upon a notice to that effect given one
month in advance (Civ. Code, sec. 1946). No such previous
notice appears to have been given. A notice given on Feb-
ruary 10, 1909, would not terminate the lease until March
10th, and the tenant would be liable for the rent for that
month if a proper suit had been begun therefor. But the
plaintiff does not sue upon such liability and the question is
not involved in this action. The complaint was filed on
March 20, 1909. It declares upon the lease, stating that the
rent was thereby made payable in advance and that the rentals
payable on February 10th, for the ensuing month, and that
payable on March 10th for the month ending April 10th, were
due and unpaid. It does not allege a holding over, or a ten-
ancy from month to month, or an occupancy or possession
for either of these months. It assumes that the lease had
not terminated and the action is to recover the advance rent
due by the express covenants of the lease. No claim for re-
covery is made except upon the theory that the lease was still
in force when the suit was begun. The lease, as we have here-
tofore stated, terminated when the order for the removal of

the buildings was made and the clause relating to such order declares that upon such termination neither party shall be liable to the other under the lease.    The defendant therefore is not liable upon the obligation set forth in the complaint. We therefore find it unnecessary to determine the question whether under a proper pleading, in any event, it would be liable for the month ending March 10, 1909.

There is a suggestion that the lease is invalid because it is a contract to erect a building of a character forbidden by the fire ordinance, and therefore contrary to the policy of express law (Civ. Code, secs. 1608, 1667).    Our conclusion that the defendant is not liable for the rent under the lease, even if it is valid, makes it unnecessary to decide about its legality.

The judgment and order are reversed.

Angellotti, J., Sloss, J., Melvin, J., and Henshaw, J., concurred.