[Civ. No. 2809. First Appellate District, Division One.—June 14, 1919.]

## MICHAEL MAGUIRE et al., Appellants, v. TIMOTHY A. REARDON et al., Respondents.

[1] Municipal Corporations—San Francisco—Erection of Buildings Contrary to Law—Perpetuation of Nuisance—Equity.— A temporary wooden building erected in violation of law within the fire limits of the city and county of San Francisco after the great conflagration of April 18, 1906, constitutes a public nuisance, and a court of equity will refuse any relief designed to perpetuate its maintenance, regardless of the validity of the ordinance under which the board of public works is proceeding to demolish such building.

[2] Id.—Building Ordinance—Application to Wooden Buildings— Discrimination.—The ordinance of the city and county of San Francisco, approved May 8, 1917, and known as "The Building Law," is not discriminatory in providing for the general demolition and removal of wooden buildings, and not referring to buildings of other inflammable material.

[3] Id.—Ordinance not Retroactive.—The building sought to be removed by the city having been erected after the ordinance defining the fire limits, the ordinance providing for the general demolition and removal of wooden buildings within such limits is not retroactive.

[4] Id.—Demolition of Building—Due Process of Law.—Where a building is erected in violation of an ordinance fixing the fire limits, it may be torn down and removed without any judicial proceeding whatever.

---

4. Right of municipality to remove building erected within fire limits in violation of valid ordinance, note, 9 Ann. Cas. 292.

[5] ID.—PERMISSION BY CITY TO ERECT BUILDING—IMPLIED CONTRACT. The fact that the city permitted the erection of such building in violation of the ordinance fixing the fire limits did not constitute an implied contract upon its part that the owners thereof should be permitted to maintain it, including the right to enter into contracts with others for the use and enjoyment thereof.

[6] ID.—KNOWLEDGE OF ILLEGALITY—PRESUMPTION AS TO TENANTS. Such building having been erected in violation of the provisions of the ordinance fixing the fire limits, any contracts made by the owners with their tenants must be deemed to have been made with the knowledge that the building was illegally maintained, and subject to the right of the city to remove it at any time.

[7] ID.—POLICE POWER.—The police power cannot be bartered away even by express contract, and the power to remove a wooden building erected within the fire limits is an exercise of the police power of the first importance.

[8] ID.—DEMOLITION OF BUILDINGS BY BOARD OF PUBLIC WORKS— POWER OF SUPERVISORS TO AUTHORIZE.—Under the provisions of the charter of the city and county of San Francisco, the board of supervisors has ample power, by the adoption of an ordinance, to confer upon the board of public works full and complete authority to take and provide the required steps to remove the wooden buildings erected and maintained within the fire limits contrary to law.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Geo. E. Crothers, Judge. Affirmed.

The facts are stated in the opinion of the court.

Andrew G. Maguire and J. F. Riley for Appellants.

George Lull, City Attorney, and Maurice T. Dooling, Jr., Assistant City Attorney, for Respondents.

WASTE, P. J.—Plaintiffs and appellants brought this action to enjoin respondents, the board of public works and chief building inspector of the city and county of San Francisco, from demolishing a certain wooden building erected and maintained within the fire limits of said city and county. The cause was submitted upon an agreed statement of facts, and this is an appeal from the judgment of the lower court denying the plaintiffs the relief asked for.

The building was erected in May, 1906, immediately following the great fire of that year, at a cost of twelve thousand dollars, and is a wooden building containing nine stores, producing a substantial rental, the tenants in the said nine stores using the same for lawful business purposes. At the time of its construction, by and with the consent of defendants, and under the written permit and supervision of the said board of public works, an oven was constructed and installed by the plaintiffs in said building, and as a part thereof, at a cost of seven hundred dollars. By its construction the oven became, and at the time of the filing of the complaint still was, a part of the building.

Acting under and by virtue of the authority and direction of an ordinance of the city and county of San Francisco, approved May 8, 1917 (Ordinance No. 4170, N. S.), and known as "The Building Law," the board of public works adopted a resolution directing plaintiffs to raze the buildings in question within five days of the date of the service of notice thereof. The adoption of this resolution was followed by notice served on plaintiffs, to the effect that the board would demolish and remove the buildings upon the failure of the plaintiffs to remove the same within five days of the date of the notification. Notice of the intention of the board of public works was also served on each of the tenants of the building. Application to the lower court for an injunction to prevent the board from carrying out its determination, and the judgment of the lower court, refusing the same, followed.

The question thus clearly presented to this court for determination is whether or not wooden buildings erected within the fire limits may be summarily destroyed by duly authorized public officers of the municipality. Appellant maintains that the only ordinance in force covering the subject at the time of the erection of the building did not prohibit the erection of a one-story wooden building such as the one in question; and that there is nothing in the charter of the city and county of San Francisco prohibiting such construction. These propositions must be determined adversely to the contention of the appellants.

The charter of the city and county of San Francisco now provides, and at all times mentioned in the agreed state-

ment of facts did provide, in subdivision 5 of section 1, chapter II, article II, as follows, to wit:

"Section 1. Subject to the provisions, limitations and restrictions in this charter contained, the Board of Supervisors shall have power . . .

"5. To fix limits within which wooden buildings or structures shall not be erected, placed, or maintained, and to prohibit the same within such limits. Such limits when once established shall not be changed except by extension."

Pursuant to the power thus given by the charter, and long prior to the construction of the frame building herein referred to, the board of supervisors of the city and county of San Francisco duly and regularly adopted and enacted an ordinance, No. 1198. Said ordinance was approved on May 5, 1904, and was entitled: "Defining the fire limits of the City and County of San Francisco." This ordinance provides in section 1 thereof that: "The fire limits shall be bounded by a line commencing . . . ," followed by an apt description of metes and bounds. The building in question here is situated within the described district. Section 2 of the ordinance provides a penalty for violating the provisions of the ordinance, but does not otherwise provide that wooden buildings or structures shall not be erected, placed or maintained within the district described. The above provisions of the charter and this same ordinance were considered by this court in *Bancroft* v. *Goldberg, Bowen & Co.,* 16 Cal. App. Dec. 37, and it was there held that the effect of the ordinance and the charter provisions is to make the erection or maintenance of a wooden building within the fire limits, as defined in the ordinance, unlawful; that the function of the ordinance is to define the fire limits, and when these limits are thus defined the charter itself makes it unlawful to erect or maintain wooden buildings within such limits. The court said: "No express prohibition in the ordinance is required. The charter makes the prohibition. . . . So when the board of supervisors adopted the ordinance defining the fire limits, it was exercising its power 'to fix the limits within which wooden buildings or structures shall not be erected, placed, or maintained.' It was thus unlawful to maintain the building in question upon the leased premises at the date of the lease and at all times subsequently."

The supreme court granted a rehearing in the above case and in *Bancroft* v. *Goldberg, Bowen & Co.*, 166 Cal. 416, [137 Pac. 18], sustained the decision of this court to the effect that the building there under consideration was erected in violation of the provisions of the building ordinance of the city and county of San Francisco.

[1] The appellants argue that Ordinance No. 4170, N. S., under which the respondents, the board of public works, are proceeding to demolish this building is unconstitutional for various reasons. The supreme court, in *Bancroft* v. *Goldberg, Bowen & Co., supra,* further held that the ordinance requiring the building which had been erected subsequently to April, 1906, in violation of the existing laws of the city and county, to be demolished or removed on or before a certain date, is a declaration of the policy of the board of supervisors that all temporary wooden buildings, erected in violation of law within the fire limits after the great conflagration of April 18, 1906, are a menace to the safety of the city, no longer finding any possible warrant in the necessities of the people, and that they constituted public nuisances which should be abated as soon as is reasonably possible. We see no distinction between the building under consideration in that case and the one which is the subject of this litigation. The building constitutes a public nuisance and a court of equity will refuse any relief designed to perpetuate its maintenance, regardless of the validity of the ordinance. (*Varney & Green* v. *Williams,* 155 Cal. 318, [132 Am. St. Rep. 88, 21 L. R. A. (N. S.) 741, 100 Pac. 867].) It would appear, therefore, that the appellants are not in position to attack said ordinance No. 4170, for the reason that, having erected a wooden building in violation of law, and having continued in violation of law to maintain it to the present time, they cannot seek aid of a court of equity to maintain it. (Civ. Code, sec. 3517.)

[2] Assuming, however, that appellants might suggest the unconstitutionality of the ordinance, and for the reasons urged on this appeal, we are satisfied that there is no merit in any of the points made. The ordinance is not discriminatory in providing for the general demolition and removal of wooden buildings, and not referring to buildings of

other inflammable material.  (*Baumgartner* v. *Hasty,* 100 Ind. 575, [50 Am. Rep. 830].)

. [3]  The ordinance is not retroactive, for the building sought to be removed by the city was erected after the passage of the ordinance defining the fire limits.  (*Bancroft* v. *Goldberg, Bowen & Co., supra.*)

[4]  The ordinance does not deprive appellants of any vested rights without due process of law.  "In removing a building erected in violation of law . . . no private right is invaded, because none could grow out of the illegal act." (*Baumgartner* v. *Hasty, supra; Brooklyn* v. *Furey,* 30 N. Y. Supp. 349.)  Such building erected in violation of an ordinance fixing the fire limits may be torn down and removed without any judicial proceeding whatever.  (*Eikenlaub* v. *City of St. Joseph,* 113 Mo. 395, [18 L. R. A. 590, 21 S. W. 8] ; *Lemmon* v. *Guthrie Center,* 113 Iowa, 36, [86 Am. St. Rep. 361, 84 N. W. 986].)

[5]  Appellants contend that because the city permitted them to erect a building, there was at least an implied contract upon its part that they should be permitted to maintain it, including the right to enter into contracts with others for the use and enjoyment of it.  This contention, like all the others made by the appellants, has ,been decided to the contrary.

"The charter of the city and county of San Francisco authorizes the board of supervisors to fix the limits within which wooden buildings or structures shall not be erected or maintained, and provides that 'such limits when once established shall not be changed except by extension.' (Charter, c. II, sec. 5.)  So that it would seem that the supervisors would have had no authority after the fire, even by ordinance, to permit the erection of any wooden building within the limits previously defined as the fire limits, the charter provision limiting their powers in this behalf.  But they did not even purport to so do by ordinance, which even if there were no charter provisions would be essential to any change in existing ordinances on the subject.  All that there was in this case in effect was the unofficial announcement of the municipal authorities that they would regard the law on the subject suspended for the time being and would not attempt to enforce it, which was followed by the actual failure on the part of such au-

thorities to enforce the same. The good faith both of the authorities and those erecting wooden buildings under the assurance thus given is not to be questioned in the slightest degree. It may freely be conceded that the emergency was such as to morally justify the authorities and those acting upon their assurance in doing as they did. But of course the law could not be changed in any such way. The ordinances on the subject continued in force unaffected by the unofficial announcement in the slightest degree, with the result that the construction of this building on this lot, which was expressly provided for in the lease, was 'contrary to an express provision of law,' and therefore 'not lawful' (Civ. Code, sec. 1667), on May 17, 1906, and at all times thenceforth. We regard this proposition as so elementary in its nature as to require no citation of authority to uphold it. Certainly no case cited by learned counsel for plaintiff tends to support a contrary law." (*Howell* v. *City of Hamburg Co.,* 165 Cal. 175, [131 Pac. 130].)

[6] Any contracts made by the appellants with their tenants must be deemed to have been made with the knowledge that the building was illegally maintained, and subject to the right of the city to remove it at any time. The city was not estopped to destroy the building; [7] the police power cannot be bartered away even by express contract, and the power to remove a wooden building erected within the fire limits is an exercise of the police power of the first importance, since it immediately concerns the safety of persons and property. (*Fire Department of New York* v. *Atlas S. S. Co.,* 106 N. Y. 566, [13 N. E. 329]; *Boston Beer Co.* v. *Massachusetts,* 97 U. S. 25, [24 L. Ed. 989, 992, see, also, Rose's U. S. Notes]; *Union Cemetery Assn.* v. *Kansas City,* 252 Mo. 466, [161 S. W. 261].)

[8] Appellants' last contention is that the board of supervisors has no power to authorize the board of public works to demolish buildings. As before pointed out, the board of supervisors has power under the charter "to fix the limitations within which wooden buildings or structures may not be erected, placed or maintained," and to prohibit the same within such limitations. "The board of public works shall have charge, superintendence and control,

under such ordinances as may from time to time be adopted by the supervisors . . . of the supervision of any and all building construction in the city and county." (Charter, subd. 5, sec. 9, c. I, art. VI.) "The chief engineer, assistant chief engineers, battalion chiefs and the fire marshal shall constitute a board of fire wardens, with power to inspect, and report to the board of public works, as to the safety of buildings and other structures within the city and county." (Sec. 1, c. VI, art. IX of the charter.)

"All the legislative power of the city is by the charter vested in the board of supervisors (art. II, c. I, sec. 1). By virtue of this clause, the constitutional grant of the police powers of the state to the city goes directly to and vests in the board, which thereby becomes possessed of the right to exercise within the city limits the entire police power of the state subject only to the control of general laws." (*Odd Fellows Cemetery Assn.* v. *San Francisco,* 140 Cal. 226, 230, 231, [73 Pac. 987].) *In re Montgomery,* 163 Cal. 457, [Ann. Cas. 1914A, 130, 125 Pac. 1070].) It seems but logical to conclude, therefore, that the board of supervisors had ample power, by the adoption of the ordinance, to confer upon the board of public works full and complete authority to take and provide the required steps to remove the building in question, and thereby abate the nuisance arising from its erection and maintenance contrary to law.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 11, 1919.

All the Justices concurred except Wilbur, J., who was absent.